IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:  BRIAN J. SKILES, | : Chapter 13 |
| t/a SKILES RENTALS, debtor | : Case No.  14-11567 |

**AMENDED DEBTOR'S COMBINED DISCLOSURE STATEMENT AND
CHAPTER 11 PLAN UNDER 11 USC 1125(f)(1) and B.R.C.3017.1**

**I.    Introduction**

This combined Disclosure Statement and Plan is submitted by Brian J. Skiles t/a Skiles Rentals, the Debtor, an individual, pursuant to 11 U.S.C. Section 1121 et seq.  The purpose of this Disclosure Statement and Chapter 11 Plan is to divulge adequate information to the holders of claims or interests in this matter so that they may make an informed judgment about the Debtor's Plan of Reorganization.  After notice and a hearing, the court will determine if adequate information is contained herein to enable creditors to make an informed judgment about the Plan and to determine if the Plan meets the requirements of 11 U.S.C. 1121 et seq.  All creditors and interested persons should carefully inspect the contents of this Disclosure Statement and Chapter 11 Plan.

**II.   History**

The Debtor owns and leases, and has owned and leased for over 20 years, real estate in the City of Reading. The real estate consists largely of residential dwelling units although a few commercial units are contained in the Debtor's portfolio.  The Debtor's properties are all located in the geographic area between South 6th Street and South 8th Street and Franklin and Chestnut Streets.  The properties are centrally located within a few blocks of Santander Arena, several parking garages, Penn Street retail shops, and transportation facilities. Significant redevelopment has occurred in the area such that revitalization of the neighborhood is likely forthcoming.

Approximately six years ago, the national and local economy fell into a serious recession. Many individuals who were among the Debtor's typical target market tenant, found themselves without jobs, and/or with reduced income. The resulting reduction in disposable income of these individuals affected the Debtor's ability to collect rents.  In addition, and unfortunately, the associated expenses with the operation of these properties, particularly water and sewer charges, taxes and other utility charges, found no reductions. With the economy improving, with the

accommodations contemplated by this Plan, with redevelopment of the area, and with the neighborhood surrounding the Debtor's properties improving, the Debtor anticipates rentals to increase and profitably to return to pre-recession levels in the next 2 years.

### III. Organization of the Company

Brian Skiles is the Debtor/Owner.   He is solely responsible for the management of the Skiles Rentals operations. The Debtor proposes that the existing management will remain in place at current compensation. The Debtor has no employees but employs independent contractors on an as needed basis, to address maintenance issues.

### IV. Present and Projected Financial Condition of the Company

Attached hereto and incorporated herein as Exhibit "A" are pro forma income statements for the next two years that project future rental income and expenses. Although projections are modest, the Debtor anticipates net earnings growth resulting from the economic recovery and area rehabilitation.

### V. Voting Process

The Debtor's Plan as proposed can be confirmed by the Court and thereby made binding on creditors and holders of other interests if it is accepted by the holders of two-thirds in amount and more than one-half in number of claims in each class and the holders of two-thirds in amount of equity security interests in each class voting on the Plan. In the event the requisite acceptances are not obtained, the Court may nevertheless confirm the Plan if the Court finds that the Plan accords fair and equitable treatment to the class or classes rejecting it and otherwise satisfies the requirements of Section 1129(b) of the Code.   To have a vote count one must complete and return a ballot.

Ballots must be mailed to John A. DiGiamberardino, Esquire, at 845 North Park Road Suite 101, Wyomissing PA 19610 by the date fixed by the Bankruptcy Court.

### VI. Definitions.

1. *Claim* shall mean any right to payment, or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, against Debtor in existence on or as of the Petition date, whether or not such right to payment or right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, secured, or unsecured.

2.  *Allowed Claim* shall mean a Claim (a) in respect of which a Proof of Claim has been filed with the Court within the applicable period of limitation fixed by Rule 3001 or (b) scheduled in the list of creditors prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Rule 3001 or by an Order of the Court as to which any such objection has been determined by an Order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending.

3.  *Allowed Secured Claim* shall mean an allowed claim secured by a lien, security interest or other charge against or interest in property in which the Debtor has an interest, or which is subject to setoff under Section 553 of the Code, to the extent of the value (determined in accordance with Section 506(a) of the Code) of the interest of the holder of such allowed claim in the Debtor's interest in such property or to the extent of the amount subject to such setoff as the case may be.

4.  *Allowed Priority Claim* shall mean an allowed claim which is entitled to priority pursuant to Section 507(a)(2), (3), (4), (5), (6) of the Bankruptcy Code.

5.  *Debtor* shall mean the Debtor, Brian J. Skiles, the Debtor in this Chapter 11 case, or any successor thereto or transferee of all or substantially all of its assets.

6.  *Confirmation Date* shall mean the date upon which the Court enters the Order of Confirmation relating to this Plan.

7.  *Effective Date* or *Effective Date of the Plan* shall mean the date upon which the Order of Confirmation is no longer subject to appeal or certiorari proceeding, upon which date no such date or certiorari proceeding is then pending, or on which date all of the conditions to the effectiveness of the Plan expressly set forth in the Plan have been satisfied fully.

8.  *Class* shall mean any class into which Allowed Claims or Allowed Interests are classified pursuant to Article III.

9.  *Pro rata* shall mean, with respect to the owner or holder of any Allowed Claim, Allowed Security Claim, or Allowed Priority Claim, in the same proportion that the amount of each such Allowed Claim, Allowed Security Claim, or Allowed Priority Claim bears to the aggregate amount of debt in the class to which such Allowed Claim, Allowed Security Claim, or Allowed Priority Claim belongs.

10. *Preference actions* shall mean all causes of actions and/or complaints filed or to be filed by the Debtor or its designee against any creditor who may have received a payment recoverable by the Debtor under 11 U.S.C. 547.

**VII. Administrative Expenses.**

The administrative expenses of the Debtor's Chapter 11 case allowed pursuant to Section 503(b) of the Bankruptcy Code shall be paid in full in cash or verifiable funds upon the Effective date of Plan, or upon such other payment arrangement as the Debtor and the holders of the administrative claims shall heretofore agree or the Court shall Order.

**VIII. Classification of Claims and Interests.**

The Claims and Interest are classified as follows:

1. *Class 1.* Holders of Allowed Secured Claims as described in Exhibit "B" who hold consensual secured claims who are being paid the value of their collateral.

2. Class 2. Holders of Allowed secured clams as described on Exhibit "C' who hold secured claims that collateral for which is being surrendered.

3. Class 3. Holders of Allowed Secured Claims as described on Exhibit "D" who hold secured tax liens or municipal claims whose secured claims are being paid.

4. *Class 4.* Holders of Allowed Priority Claims as described on Exhibit "E"

5. *Class 5.* Holders of General Unsecured Claims.

6. *Class 6.* Equity Interests of the Debtor.

**IX. Proposed Treatment of Claims and Interests.**

1. *Class 1 Claimants.* Except as indicated on the attached Exhibit "B", Class 1 claimants shall be paid the value of their secured claims in 180 monthly installments of principal and interest at the rate of 5% per annum. The identities of these Claimants and the terms of repayment to each are more fully described and summarized on Exhibit "B". Each Class 1 Claimant shall retain its lien unimpaired. A future default by the Debtor in the payments contemplated to be made to Class 1 Claimants under this Plan may be enforced by the Class 1 Claimants in accordance with Debtor's loan documents with each such Class 1 Claimant and applicable law.

2. *Class 2 Claimants.* The Debtor shall surrender to Class 2 Claimants, as their interests may appear of record, each such creditor's collateral, in full satisfaction of their claims, in order of priority as determined under Pennsylvania lien priority law. The identities of these

Claimants, and the collateral being surrendered, is more fully described and summarized on Exhibit "C".

3.  *Class 3 Claimants.*  Class 3 claimants shall be paid (100%) of each such creditor's allowed secured claim, in 60 monthly installments with statutory interest at the rate of 9%. Payments shall commence 30 days following confirmation of this Chapter 11 Plan and monthly thereafter on the same day of each month. The identities of these Claimants and the terms of repayment to each are more fully described and summarized on Exhibit "D". Each Class 3 Claimant shall retain its lien unimpaired. A future default by the Debtor in the payments contemplated to be made to Class 3 Claimants under this Plan may be enforced by the Class 3 Claimants in accordance with applicable law.

4.  Class 4 Claimants.  Class 4 claimants shall be paid (100%) of each such creditor's allowed priority claim, in 60 monthly installments with no interest. Payments shall commence 30 days following confirmation of this Chapter 11 Plan and monthly thereafter on the same day of each month. The identities of these Claimants and the terms of repayment to each are more fully described and summarized on Exhibit "E". A future default by the Debtor in the payments contemplated to be made to Class 4 Claimants under this Plan may be enforced by the Class 4 Claimants in accordance with applicable law. Payments made to Class 4 Creditors shall be applied first to the oldest obligation of the Debtor then to later years' obligations. Any applicable statute of limitations relating to the collection of Class 4 Claims shall be extended through and including September 15, 2020.

5.  *Class 5 Claims.*  Each holder of a Class 5 claim shall be paid (5%) of its allowed unsecured claim, in full, in 2 equal installments due on the 4th and 5th anniversary of confirmation of this Plan.

6.  *Class 6 Claimants.*  The sole holder of a Class 6 interest is Brian J. Skiles, the Debtor's Principal, who shall retain his interest subject to full performance of this Plan.

The payments, distributions, and other treatments provided in respect of each Allowed Claim or Interest in this Article IV shall be in complete satisfaction, discharge and release of such Allowed Claim, except as otherwise expressly provided.

Notwithstanding any other provision of the Plan specifying a date or time for the payment or distribution of consideration hereunder, payments and distributions in respect of any Claim and Interest which at such date or time is disputed, unliquidated, or contingent shall not be made until

such Claim or Interest becomes an Allowed Claim or Allowed Interest, whereupon such payment and distributions shall be made promptly, together with any interest accrued thereon in accordance with the provisions of this Plan.

X.  **Liquidation Analysis.**

    A.  Assets:

| | | | |
|---|---|---|---:|
| 1. | Real Estate | $ | 674,000.00 |
| 2. | Cash and Bank Deposits | $ | 1,460.00 |
| 3. | Miscellaneous personal property | $ | 42,833.30 |
| | Total Assets | $ | 718,293.30 |

    B.  Debts as per Claims filed:

| | | | |
|---|---|---|---:|
| 1. | Secured Claims | $ | 894,713.07 |
| 2. | Administrative Claims (estimated) | $ | 20,000.00 |
| 3. | Priority Claims | $ | 31,091.40 |
| 4. | General unsecured claims | $ | 157,810.49 |
| | Total Debts | $ | 1,103,614.90 |

| | | |
|---|---|---:|
| Amount of non-exempt assets | $ | 0.00 |
| Percent of Priority Claims to be paid under Plan | | 100% |
| Percent of Priority Claims to be paid upon Liquidation | | 0.00 |
| Percent of Unsecured Claims to be paid under Plan | | 5% |
| Percent of Unsecured Claims to be paid upon Liquidation | | 0.00 |

XI.  **Covenants.**

Until such time as all of the payments contemplated to be made on account of all Claims have been made, Debtor covenants that it shall maintain and cause to be maintained a system of accounting established and administered in accordance with normal accounting principles, complete and accurate records and books of account. In addition, as of the date of this Plan the Debtor has met all of his post-petition financial obligations, including, but not limited to, payroll tax deposits, and will continue to satisfy said obligations on a timely basis consistent with the terms contained herein.

XII. **Default.**

The occurrence of any of the following shall constitute an event of default under the Plan:

    A. *Failure to make payment.* Failure on the part of Debtor to pay fully within fifteen (15) days after its due date, any payment required to be made under the terms of this Plan with respect to Class 1, Class 2, Class 3, or Class 4 Creditors.

B. *Failure to perform other terms and provisions.* Failure on the part of the Debtor to perform or observe a material term or provision set forth in this Plan, which failure remains uncured for a period of thirty (30) days after written notice.

If any event of default shall have occurred and be continuing, the holders of any Class 1, 2, 3, or 4 Claim may give notice to the Debtor at 25 State St., Hamburg, PA 19526, and Debtor's counsel: John A. DiGiamberardino, Esquire, at 845 North Park Road, Suite 101, Wyomissing, PA 19610, in the occurrence of the event of such a default.

**XIII. Retention of Jurisdiction.**

The Court shall retain jurisdiction of this Chapter 11 case pursuant to and for the purposes set forth in Section 1127(b) of the Code and to:

A.  Determine the allowance or disallowance of Claims and Interests and actions to recover preferences, if any;

B.  Fix allowances of compensation and other administrative expenses; and

C.  For such other matters as may be set forth in the Order of Confirmation.

**XIV. Executory Contracts.**

All real estate leases that the Debtor intends to retain and pay pursuant to Exhibit "B" are hereby assumed for real properties retained by the Debtor pursuant to this Plan. Debtor hereby rejects, pursuant to Section 1123(b)(2) of the Code, all other executory contracts.

**XV. Miscellaneous.**

Neither the filing of this Plan, nor any statement or provision contained herein, nor the taking by any Creditor of any action with respect to this Plan shall (a) be or be deemed to be an admission against interest and (b) until the Effective Date, be or be deemed to be a waiver of any rights which any Creditor may have against Debtor or any of its properties or any other Creditor of Debtor, and until the Effective Date, all such rights are specifically reserved. In the event that the Effective Date does not occur, neither this Plan nor any statement contained herein may be used or relied upon in any manner in any suit, action, proceeding, or controversy in or outside of the reorganization case involving Debtor.

Dated: 6/3/15                                              By:  s/Brian J. Skiles, Debtor

## Skiles Rentals

## Income Projection
Projected for Calendar year 2015 and 2016

| Revenue | 2015 | 2016 |
|---|---|---|
| Gross Rentals | 300,000 | 315,000 |
| **Total Gross Rentals** | **300,000** | **315,000** |
| **Debt Service** | | |
| Mortgage loans as modified | 56,850 | 56,850 |
| secured claims tax and municipal | 4,665 | 4,665 |
| priority taxes | 6,220 | 6,220 |
| unsecured creditors (amortized 5 years) | 1,575 | 1,575 |
| Total debt Service | 72,310 | 72,310 |
| **Gross Rentals net of Debt Service** | **227,690** | **247,690** |
| **Expenses** | | |
| Advertising | 3,000 | 3,200 |
| auto expenses | 2,000 | 2,200 |
| cleaning and maintenance | 35,000 | 36,000 |
| insurance | 14,000 | 15,000 |
| legal and professional fees | 6,000 | 6,500 |
| management fees | 24,000 | 25,000 |
| repairs | 17,000 | 18,000 |
| Supplies | 15,000 | 15,500 |
| Office supplies | 1,000 | 1,200 |
| Real estate and Misc taxes | 18,000 | 19,000 |
| Utilities | 70,000 | 71,000 |
| trash | 8,000 | 8,250 |
| alarm system | 2,000 | 2,500 |
| postage | 500 | 525 |
| misc rent | 200 | 210 |
| office expense | 250 | 275 |
| phone | 2,300 | 2,400 |
| miscellaneous | 1,000 | 1,250 |
| Total Operating Expenses | 219,250 | 228,010 |
| **Operating Income (Loss)** | **8,440** | **19,680** |
| Income Before Taxes | 8,440 | 19,680 |
| **Net Income** | **8,440** | **19,680** |

Exhibit "A"

# EXHIBIT "B"
## ALLOWED SECURED CLAIMS

Except as set forth below, each of the following secured creditors shall be paid in 180 monthly payments of principal and interest at the rate of 5% per annum in the monthly amount indicated below. Payments shall commence on the 1st day of July, 2015 and continue thereafter on the same day of each month.

| Creditor/Collateral | Claim # | Secured Value (11 USC 506) | Monthly Installment |
|---|---|---|---|
| Community First Fund/109 S. 7th St/. 137 S. 8th St., Reading, PA  This claim shall balloon in 7 years. | 15 | $30,000.00 | $237.24 |
| Community First Fund/111 S. 7th St.  This claim shall balloon in 7 years. | 16 | $35,000.00 | $276.78 |
| Community First Fund/706 Franklin St.  This claim shall balloon in 7 years. | 17 | $75,000.00 | $632.63 |
| First Citizens/720 Franklin St. | 18 | $15,000.00 | $118.62 |
| First Citizens/704 Franklin St. | 19 | $31,500.00 | $249.10 |
| First Citizens/716 Franklin St. | 21 | $49,685.65 | $392.91 |
| CF SBC 12-1 Seneca/724 Franklin St  This claim shall be paid per stipulation dated 1/16/15 | 22 | $100,000.00 | |
| Nationstar Mortgage/722 Franklin St. | 23 | $25,000.00 | $197.70 |
| Springleaf Financial/1981, 1987 Toyota  This claim shall be paid in 3 years with interest at 4.5% per annum | 25 | $3,500.00 | $104.11 |
| Nationstar Mortgage/730 Franklin St. | 36 | $17,549.32 | $138.78 |
| First Citizens/718 Franklin St. | 39 | $30,000.00 | $237.24 |
| Wells Fargo Bank/114 S. 8th St | 44 | $30,000.00 | $276.78 |
| Ocwen Loan Servicing/714 Franklin St. | 45 | $30,000.00 | $237.24 |
| Ocwen Loan Servicing/18 S. 10th St. | 50 | $35,000.00 | $276.78 |

| | | | |
|---|---|---|---|
| Lorraine Kratz/700 Franklin St. | 49 | $51,327.92 | $850.00 |

This claim is to be paid at the rate of 10% per annum over approximately 7 years.

# EXHIBIT "C"
## Secured Claims - collateral to be surrendered

Wells Fargo Bank NA/25 State Street, Hamburg, PA        Claim #41

RKL Financial/702 Franklin St., Reading, PA             Claim #42

# EXHIBIT "D"
## Secured Claims - Municipal and Tax Secured Claims

| Creditor/Collateral | Claim # | Claim Amount | Monthly Installment |
|---|---|---|---|
| Berks County Tax Claim Bureau/ 730 Franklin Street, Reading, PA | 6 | $2,622.91 | $54.44 |
| Berks County Tax Claim Bureau/ 722 Franklin Street, Reading, PA | 7 | $2,752.75 | $57.14 |
| Berks County Tax Claim Bureau 700 Franklin Street, Reading, PA | 8 | $2,918.93 | $60.59 |
| Berks County Tax Claim Bureau 706 Franklin Street, Reading, PA | 10 | $1,947.26 | $40.42 |
| Berks County Tax Claim Bureau 109 S. 7th Street, Reading, PA | 11 | $1,266.47 | $26.29 |
| Berks County Tax Claim Bureau/ 724 Franklin Street, Reading, PA | 12 | $1,308.36 | $27.16 |
| Berks County Tax Claim Bureau/ 111 S. 7th Street, Reading, PA | 13 | $895.01 | $18.58 |
| RAWA/All properties-city of Reading | 48 | $5,000.00 | $103.79 |
| Berks County Tax Claim Bureau/ 137 S. 8th Street, Reading, PA | 9 | $1,808.69 | $37.55 |

# EXHIBIT "E"
## ALLOWED PRIORITY CLAIMS

Each of the following Creditor's priority claims shall be paid in full, in 60 monthly installments with first payment to commence 30 days from the date of confirmation and thereafter on the same day of each month.   The monthly payment is indicated below:

Department of Revenue -      claim #1        $3,103.17         $51.72/month

Internal Revenue Service -    claim #14       $27,988.23        $466.47/month